UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-81-KKC

WINFORD ASHER, PLAINTIFF

VS. **OPINION & ORDER**

SHAMROCK COAL COMPANY, INC.,
JAMES RIVER COAL COMPANY and
HARTFORD SPECIALITY COMPANY, DEFENDANTS

\*\*\* \*\*\* \*\*\*

Plaintiff, Winford Asher, filed a Motion for Judgment to Reverse Administrative Decision (Rec. 20) denying his claim for long-term disability benefits pursuant to the Employee Retirement Income Security Act. 29 U.S.C. § 1001. After conducting a *de novo* review of the facts and legal arguments in this case, this court DENIES the motion and affirms the administrative decision.

**I. FACTS**

Winford Asher was employed by the Shamrock Coal Country ("Shamrock") for a period of time prior to October, 1988.[1] As a permanent employee of Shamrock Coal, he was covered by its Long-Term Disability Plan, (the "Plan") which set up a series of benefits for full-time employees who became disabled due to their work for the company. At some point Asher applied for benefits under the Plan, claiming that he had become disabled during his time with the company. In October, 1998, disability benefits were awarded to Asher in the sum of $1,259 per month.

As part of the terms and provisions of the Plan, Asher was required to apply for any other

---

[1] Elk River Resources, Inc. was the parent of Shamrock until James River coal Company purchased it in February, 1999.

1

disability benefits for which he might be entitled. Asher thus applied for, and was awarded Social Security Disability Benefits in the Spring of 1990. After being awarded these benefits, the amount of payment left for Shamrock under the plan was $560 a month, which it paid consistently over the next nine years.

The Plan required that for the first 24 months of total disability, an employee must demonstrate that he was unable to "work at the type of occupation in which the employee normally engages." (Admin. Rec. p. 4). Once this initial period of 24 months elapsed, benefits would continue only if the employee was unable to work at "any reasonable occupation." "Any reasonable occupation" was defined by the Plan as "any gainful activity for which the employee is fitted by education, training or experience, or for which the employee could reasonably become fitted." (Admin. Rec. p. 5). Such benefits, once granted, would continue as long as the individual continued to meet the definition of disability and complied with the Plan's requirements to sustain this continued status.

After applying for benefits, Asher was found eligible for the first 24 months of coverage and was later deemed unable to complete "any reasonable occupation", thus allowing for more permanent coverage. Beginning in 1992, the Hartford Life and Accident Insurance Company ("Hartford") became the third-party administrator of the Plan. It required and Asher complied with the submission of a series of physicians' statements proving continued disability in order to be eligible for continuous coverage under the Plan.

In June, 1999, after being convicted of a federal crime, Asher went to federal prison. Due to this conviction, Asher's Social Security benefits were terminated. In July, 1999, Hartford contacted Asher and asked him to provide a proof of continued disability as had been done previously. (Admin, Rec. p. 439). Asher provided no information to Hartford at that time, leading to yet another letter on September 15, 1999, when Asher was informed that without a response and proof of disability, his benefits would

2

be suspended within 30 days. (Admin Rec. 445).

On October 18, 1999, Maxine Asher, the Plaintiff's sister, wrote Hartford, asserting that because Asher was in the hospital, she had been given power of attorney over his affairs. (Admin. Rec. p. 446). Hartford later learned that Asher had been admitted to a federal medical hospital in Lexington, Kentucky, and on November 4, 1999, requested that Asher's treating physician provide information regarding Asher's alleged continuing disability. (Admin. Rec. p. 449). The letter stated that if no response was received within 30 days, benefits would be discontinued. Neither Asher nor the physician responded and benefits were discontinued on December 31, 1999.

Over the next year and a half, Asher and Hartford communicated at various points about the termination of Asher's benefits. In support of a demand for reinstatement, Asher forwarded a series of medical records that he believed would prove his disability. (Admin Rec. p. 478). On May 22, 2001, after receipt of Asher's submissions, Hartford again notified Asher that his claim for benefits would be denied. (Admin. Rec. p. 507).

Subsequently, on June 11, 2001, Asher wrote the Hartford, protesting the denial of benefits and re-iterating his belief that his claim for disability had been proved. (Admin. Rec. p. 526). Again Hartford wrote Asher and explained its reasons for the decision. Thereafter, on July 5, 2001, Asher notified Hartford that he would appeal its decision. Then on August 14, 2001, Hartford advised Asher of his right to have the decision reviewed within 60 days. In addition, Hartford provided further justification for its denial. (Admin. Rec. p. 546).

The next contact between the two parties occurred on March 12, 2003, approximately 18 months after the final denial of benefits. In this communication, Asher's attorney informed Hartford of his decision to appeal the denial of benefits. Asher was then released from prison in June, 2003 and sought assistance from the Kentucky Department of Insurance to aid in his appeal. On May 18, 2004, the

Administrative Committee for the Disability Plan reconsidered Asher's claim and in an abbreviated opinion with little in the way of reasoning, Asher's claim was again denied on grounds that he had missed the applicable deadlines for reconsideration and that he did not fit the plan's definition for "total disability." On February 15, 2005, Asher filed this action to challenge that determination and it is this claim we now review.

## II. ANALYSIS

Asher and Shamrock have agreed that the proper standard for review in this action, unlike the standard of review in ERISA cases, is *de novo*. Thus this court owes no special deference to the administrative decision put forth by the Committee for the Disability Plan.

### A. Timeliness of Complaint

As an initial matter, this court will not bar review of the denial of benefits due to any time limitations in the Plan. The Administrative Committee held that Asher was barred from bringing his current action because he did not request review of the August 14, 2001 decision denying his benefits within 60 days, as required by the Plan. However the Committee focuses on the wrong date in making such a conclusion. Asher's claim was originally denied on May 22, 2001. Within three weeks, Asher challenged the decision. (Admin. Rec. pp. 507, 526). Then on July 5, 2001, Asher specifically requested the ability to "appeal" the decision. (Admin. Rec. p. 533). While it is not clear that Asher understood exactly how the administrative body would proceed on appeal, it is clear that he intended to take such an appeal.

When Hartford told Asher on August 14, 2001, that his benefits would not be reinstated and that he had 60 days to appeal that decision, it would have been reasonable for Asher to believe that he had already initiated his appeal. Requiring Asher to submit another request to appeal within 60 days was superfluous. Thus such a deadline should not be used to defeat his claim.

In this action, Shamrock claims that Asher missed another deadline, specifically the Disability Plan's three-year limitation on legal actions to recover benefit payments. According to Shamrock, the 2001 denial (whether on May 22 or August 14) created the three-year window for initiating any legal action and this action which was filed outside that window on February 15, 2005. While Shamrock correctly notes that this action was filed more than three years after the initial denial, it was filed within six months of Asher's last request for administrative review. On March 12, 2003, Asher asked that the Administrative Committee for the Disability Plan to review its decision. For reasons that are unclear to the court, this review did not occur until May, 2004 and Asher was not informed of the outcome until June, 2004. Because of the unexplainable and confusing course of events and complications created by Asher's imprisonment, the Court will consider Asher's claim timely filed.

**B. Asher's Continued Disability**

Because the parties have agreed that the standard of review for this case is *de novo*, the normal review procedures required by ERISA are inapplicable. This case involves a simple factual dispute as to whether Asher meets the standard for disability benefits pursuant to the Plan. The court is, however, limited in its review to the facts available in the administrative record. *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609, 61 (6th Cir. 1998).

Because the court is no longer required to adhere to the "treating physician's rule" and give deference to the opinion of the treating physician, *see Eastover Mining Co. v. Williams*, 338 F.3d 510, 509-10 (6th Cir. 2003), this court must weigh the totality of the evidence in determining whether Asher currently meets the definition of "total disability." Additionally, because the Plan requires Asher to supply continued proof of his disability, he carries the burden of proof in this case. In light of these two factors, it becomes clear that Asher cannot meet the standard of "total disability" set forth in the Disability Plan.

Under the Disability Plan, after a two-year period of benefits, an employee is only considered totally disabled and eligible for continuous benefits if the employee is unable to perform his former occupation or any other reasonable occupation. Under the Plan, the period of total disability will end if the claimant "fails to furnish the latest required proof of the continuance of total disability to [the Third-Party Administrator] or refuses to be examined by a physician designated by the [Third-Party Administrator]. (Admin. Rec. p. 5). Such deadlines and requirements are to be upheld by courts as long as they are reasonable, and the provisions at issue here fit that definition. *See Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 289 (6th Cir. 2005).

Beginning in July, 1999, Hartford repeatedly requested that Asher provide it with proof of his continued disability. Initially Asher did not respond to these requests, likely due to his imprisonment. Ultimately Hartford determined that without the necessary proof of continued disability, benefits would be terminated. In 2000, Asher began sending medical records to Hartford. However, Asher's records were submitted long after any and all deadlines had passed and Hartford was within its rights to discontinue payments under the plan.

Even if Asher had not missed the deadline for submission of proof, it is likely that the result would have been the same as he was unable to provide evidence of continued disability. Prison medical records suggest that while Asher was injured, he was not totally disabled as defined in the Disability Plan. Further, a questionnaire that Asher completed for the Bureau of Prisons contains Asher's statement that he could walk and perform "light work" within the prison. (Admin. Rec. p. 451). In support of his claim, Asher also submitted medical restriction and screening forms completed by employees at the Manchester Federal prison that either did not mention a disability or stated explicitly that no Asher had no disability. (Admin Rec. pp. 315, 332, 349). None of this information is helpful to Asher's claims. In fact, it is harmful to his claim of total disability.

Even if this Court should ignore Asher's prison records, there is little in the record to support his claim. Aside from the fact that Asher's medical records were somewhat dated, they do not provide conclusive proof of his disability status. For example, Dr. Paul Sullivan, Asher's treating physician from 1991 to 1994 stated that Asher had "slight limitation of functional capacity" and was capable of "light work." (Admin Rec. 153, 413). Additionally, a 1999 MRI performed on Asher by FMC Neurology Laboratory, showed no evidence of significant neurological limitations and was deemed normal. (Admin. Rec. p. 280).

While a July 5, 2001, report by Dr. Eric Lopez states that Asher's condition has "retrogressed," there is no evidence in the record that established the earlier status of Asher's condition. Further, Dr. Lopez did not address the key question in this case, mainly whether Asher was totally disabled and unable to perform work necessary for any occupation. In Asher's brief to the court, he refers to an evaluation from Dr. Anthony Sugan and a 2003 evaluation from Dr. Jean Sullivan, which he claims provide proof of a continuing total disability. However, they are not in the record.

Thus the court is left in the unenviable position of having to determine whether Mr. Asher is still totally disabled as defined by the Plan and whether he should receive benefits. In an ERISA framework, an Administrative Committee, which has expertise in this area, would study the various medical opinions and come to a reasoned conclusion, which would be entitled to deference by this court. However because this case is governed by the *de novo* standard of review and the Administrative Committee decided to rule on Mr. Asher's claim, the court must make a decision with less than perfect evidence.

It is clear that Asher has an injury that in some way restricts or limits his functioning capacity. However, it is equally clear that based on Asher's own representations, Manchester Prison personnel found Asher capable of performing light work. In a perfect scenario, this court would have medical evaluations, performed by doctors with vocational expertise to determine the extent of Asher's

limitations. However, none exists. This dearth of information ultimately defeats Asher's claim.

Under the Disability Plan, Asher has the reasonable responsibility of proving continuing total disability. Asher has neither provided Hartford nor this court with evidence supporting such a finding of disability. Because he bears the burden of proof and has failed to come forward with the necessary evidentiary support, his claim ultimately fails.

Thus the court DENIES the Motion for Judgment to Reverse the Administrative Decision and affirms the administrative decision. This matter is DISMISSED and is STRICKEN from the active docket.

This the 31st day of March, 2006.

Signed By:
*Karen K. Caldwell*
United States District Judge